Please all rise. Period, period, period. This Honorable Appellate Court for the second judicial hearing is now open to the Court of Judgment. The Honorable Dr. Dick Clark. Your Honor, please be seated. Your Honor, this is case 1-2-15-063-1. This is a case involving a plaintiff at a meeting. We would like to ask the Defendant Appellate. Our Honorable Defendant Appellate, Ms. Erin Johnson. Your Honor, we have the plaintiff at the meeting. We ask that you stand and face the Court. Thank you, Ms. Johnson. You may be seated. Good morning, Your Honors. Counsel, may I please report. My name is Erin Johnson with the Office of the State Appellate Defender. And I'm here representing Defendant Appellate Murphy Skillom. This case, after a remand for 604D compliance, is here on direct appeal from the denial of Mr. Skillom's motions to withdraw his plea of guilty and to reconsider sentence in this case. The issue in this case is that the trial court failed to address the conflict which arose between Mr. Skillom and his attorney, Mr. Reinhart, during the motion to withdraw his guilty plea. And what we're asking for in this case is that this court remand this case back to the trial court with instructions that Mr. Skillom be given independent counsel to present the allegations related to the motion to withdraw his guilty plea. And the reason that's necessary in this case is that the basis for Mr. Skillom's motion was the ineffectiveness of Mr. Reinhart. And Mr. Reinhart brought that to the attention of the trial court at the outset. Is there anywhere, people who are sejali in other cases discuss when a motion or when ineffective assistance is raised. And in those cases, there's always been a pro se motion alleging ineffective assistance of counsel, correct? That's correct. There's no motion in this case, was there? Well, Mr. Reinhart files the motion, but the basis for the motion is his own ineffectiveness. My question is, the defendant never argued or even suggested that Mr. Reinhart was ineffective. Mr. Reinhart acknowledged that there was a dispute between his recollection of what was said off the record while the defendant was in the box and what the defendant's recollection was, correct? That's correct. I would say that Mr. Skillom was never given an opportunity to say my attorney's ineffective because Mr. Reinhart gets up there right away and says, you know, Your Honor, he says to me, to the judge, this is hard for me because the basis of the motion is that I didn't advise him correctly. Well, you know, you say you never had an opportunity. The pro se defendants are represented by appointing counsel, retained counsel, filed pro se motions all the time. That's how most of these cases end up before the court when lawyers or clients are dissatisfied with the performance of counsel. Mr. Skillom never filed any such motion, never said anything on the record accusing his lawyer of being ineffective. It was just a misunderstanding of communication. Is that a reasonable interpretation of the record? Well, I would disagree with that interpretation because it's not that Mr. In the way that Mr. Reinhart presented this to the court, the way that he wrote his motion, Mr. Skillom would have no reason to think that he needed to bring up these allegations of ineffective because Mr. Reinhart is putting them before the court. Mr. Reinhart is filing a motion that says he didn't understand. And the reason he didn't understand, he says to the court, is because I gave him the wrong advice. And then, you know, he asked the court to inquire of Mr. Skillom, which the court declined to do. And then Mr. Reinhart had to put his own client on. And Mr. Skillom did testify. I believed that the sentencing would be different because you told me it would be probationable. And then we have Mr. Reinhart, I mean, very, and this is why it was so improper, saying, I didn't quite say that, but you should believe Mr. Skillom and grant his motion. You should believe what Mr. Skillom believes, not that, I mean, his argument was that Mr. Skillom had this misunderstanding in his mind. And for that reason, you should allow him to withdraw his plea. That was the argument, correct? That's the argument Mr. Reinhart made. But, again, my argument would be that Mr. Reinhart isn't going to make the argument that I actually did advise him incorrectly. And that's why courts have continually recognized that an attorney can't argue his own ineffectiveness. And after Mr. Reinhart put his client on, then the judge did his own independent questioning of both the defendant and Mr. Reinhart, correct? The judge did ask several questions of the defendant and Mr. Reinhart, although I would note that the judge didn't put Mr. Reinhart under oath, and also there was no findings made. And I think that's significant here. After Mr. Skillom is examined by his own attorney and then cross-examined by the state, which obviously is a problem, the judge asks him a couple questions. He asks Mr. Reinhart, is that true, is that what you said? And then he just says, okay, arguments. And then it just moves on. The judge never says, I don't think there's conflict here, there is no issue. And then when you look at the ruling on the denial of the motion to withdraw the guilty plea, it doesn't really address whether or not Mr. Reinhart gave Mr. Skillom the correct advice, whether or not that could have impacted his plea. And so really there wasn't, the court didn't address the way it needed to this conflict. The court did make express findings regarding the credibility of the defendant. He didn't believe the defendant. Isn't that what the court said? That he believed that the defendant understood the admonishments and he clearly understood what the sentencing range was? Well, and when you look, he did say that, but his reasoning, the judge's reasoning was, the defendant must have understood because I took extra time to admonish him, and I recall having this back-and-forth discussion. But he never said, I don't believe your attorney told you something different. I don't think that's an issue. And why should that matter if it's clear on the record that the court cleared up any confusion that the defendant may have had as a result of that conversation, and the court specifically recalls, you understood, you knew the sentencing range. Why would that outside conversation make any difference? I think it would in this case. I think it would, and I can point to it. This case was up for trial. The case had been continued several times for plea negotiations. The case was ready to go to trial, and then there's finally an offer on a reduction to a Class I with a Class X sentencing range, and the defendant takes the offer rather than going to trial. Right. But I think when we look at what specifically was said, first of all, in the admonitions, I don't think the admonitions in this case were actually as clear as would be suggested by the State. When you look at what happened on August 6th, which was the date of the entry of the plea, Mr. Skillam specifically asked a question. Well, actually, first Mr. Reinhardt asked a question. I think it's interesting. On page 92 of the record of proceedings, Mr. Reinhardt says, Judge, just so I understand, if this is a Class X sentence, it's not probationable, and then they have a little discussion about what's going on, and the defendant asked the judge, my attorney told me it was dropped down to a Class I, but now you're talking about it being Class X. And then on page 93, the court responds, I haven't gotten to that. Part of the factual basis is you have two prior Class III breakers. If that's true, and I think that's significant, the court framed it as if that's true, like there's a question as to whether or not Mr. Skillam has these two prior Class IIs. And then the court goes through with Mr. Skillam the range on a Class I and then the range on a Class X and then says, as a Class X offense, this is not probationable. But then when we end the plea colloquy on August 6th, I don't think it's at all clear that this was definitely going to be a Class X sentencing, and I think that even is supported by the fact that then Mr. Reinhart comes back at sentencing and argues it's not a Class X. Well, the case was continued, and the trial court gave the State time to access or to get copies of the conviction record, correct? Correct. And on the record, page 99, the court asked him, after explaining this is a Class X, if you have these two Class IIs, this is a Class X, the court then says, has anyone promised you any specific sentence that you should receive by pleading guilty to this charge? No, sir. And he's explaining it, it's a Class X, if you have these two Class IIs. Right. No one has promised you anything, and he answers that question. But I think that's where it gets to the heart of why what happened between Mr. Skillam and Mr. Reinhart is important. Because if Mr. Reinhart was saying, I know they're saying it's a Class X, but don't worry, I can argue that it's not, I can argue for probation, that's a concerning factor. And Mr. Reinhart goes into sentencing and argues for probation, argues it's not a Class X, without really a solid foundation for saying why it's not a Class X. So I think that it is very important what did Mr. Reinhart say to Mr. Skillam. I think that conversation could make a difference in what Mr. Skillam understood when he pled and to whether his plea was actually knowing and voluntary. What about a situation where there would be some confusion as to the person's background, and the judge says, well, what's the sentencing parameters here? And the State says, it's a Class X, it's got two part Class IIs. And the defense attorney says, no, I think he only has one Class II. Then the court can still take a plea and say, no, if the State proves these Class IIs in sentencing, it's a Class X. If the State doesn't prove it, it's a Class I. I mean, wouldn't that still be a valid plea? If the defendant understands that's what's being said to him, certainly I think it is, but I think that's what goes to the meat of the argument here. What did Mr. Skillam understand when he pled guilty? At the bottom of 97, the court says, this offense is nonprobationable as a Class X offense, and it would require you to serve the minimum of six years in the Department of Corrections and mandatory supervised release. Do you understand that, defendant? Yes, sir. And then at the bottom of 98, the court says, you understand that the minimum you can be sentenced to for this offense is six years in the Department of Corrections. Do you understand that? The defendant says, yes, sir. I mean, so the defendant is clearly understanding that he's pleading to a Class X here according to this column. I would argue that while he's answering yes, the defendant didn't understand, and that becomes clear when he immediately says, I need to withdraw this. I didn't know that I was going to be Class X sentencing eligible. And then we – I mean, can admonishments – can or – can admonishments, or is it impossible for admonishments to cure incorrect advice from counsel? It's possible that admonishments could cure correct advice, and that's clear from case law, but it's also clear that it's not the situation that no matter what the attorney said, the judge could – I mean, depending on what his attorney said to him off the record, it's not at all settled that the defendant could have been operating under misapprehension when he made that plea. I mean, when I looked at this transcript, I counted six times where the court told the defendant it was a Class X case. I counted three specific times where the defendant was told that the minimum sentence you can serve is six years. And one time he was specifically told this is nonprobationable, and you're telling me that record does not clear this up based upon the record where the defense attorney may or may not have said something different to the court. And I think it doesn't, Your Honor, because we don't know what his attorney said. And I think that gets back – I think we're getting a little ahead by just looking at – yes, I understand that we have to look at this is what the court said, but when we're talking about this issue of whether or not Mr. Stillam had conflict-free counsel to present his motion of jurisdiction, he didn't have a full and fair fleshing out of what happened here. What is the argument that counsel would make on this record? Independent counsel? Yes, that the defendant should be allowed to withdraw his plea because of anything that Mr. Reinhart did that was amounting to ineffectiveness. What possible argument could independent counsel make based on this record? Well, I think that really depends, too, on what comes out in evidentiary, because independent counsel would be able to not only present the testimony of Mr. Stillam and certainly flesh out Mr. Stillam's testimony more, because here we have Mr. Reinhart asking questions for two whole pages, and they're very cursory, and they're just, what did I say? Okay, that's fine. What about the judge's inquiry of the defendant? The judge's inquiry was very brief, too, and really no one – Well, the conversation was very brief. It was a minute or so in the jury box. That was the whole conversation. Well, I think that's also an issue that needs to be explored in terms of Mr. Stillam's understanding at a full hearing. Mr. Stillam was admonished at his arraignment that he was facing a potential Class X sentence if he had two prior Class IIs. This was from the time of his arrest he was told he's facing Class X sentencing by a judge, and then again by a judge, as Justice Burke mentioned, six times at least. And a brief conversation in the box that's immediately cleared up by the court is going to provide a basis to withdraw the plea? Well, then I think he was told he was Class X sentencing, but then he's told by his attorney, good news, I've got them to drop it down to a Class I. And that's where two independent counsel could have come in and asked Mr. Reinhart, what was the good news here? Because realistically, there is no good news. There's neutral news. Was there a meritorious defense in this case? There's no way from this record to say whether or not there's a meritorious defense. If you look at the factual basis for the plea, I mean, part of your argument should be Mr. Stillam should be allowed new counsel because there might be some merit to what he's saying. Is there some merit? Is there a meritorious defense? To the charge of hijacking? Possibly. I mean, certainly from the record that we have here. He's caught in the vehicle. He's identified by the victim. He's caught in the vehicle shortly thereafter by the police. I mean, that's the factual basis. But, again, we didn't have a trial here. We can't say what the eyewitnesses, you know, ability. Frequently, after, you know, a pro se motion is filed, there's a motion to withdraw a plea, counsel will say my client had a meritorious defense, alibi, a variety of types of defenses. Is there any such defense that you've identified here? Not from the record that we have. But that doesn't mean it doesn't exist. I mean, in this case, we don't have enough of a record to say, oh, there's a problem with this eyewitness because the eyewitnesses weren't made to submit to cross-examination. There wasn't any testing of the state's case. But I also think that the posture of this case is such that it is premature to determine whether or not Mr. Skillam would have been successful overall on his motion to withdraw his plea. The issue really is did he get a full and fair opportunity to present his motion to withdraw his plea with conflict-free counsel. The case law indicates, I mean, we look at Willis or some of the other cases, that it's not at this time important to determine whether or not he definitely would have been able to withdraw his plea. The issue is he was presenting his motion to withdraw his plea with counsel that was operating under inherent conflict. You said that the record should be expanded or could be expanded at a hearing with conflict-free counsel. The only issue presented at the trial court, the only issue presented really at appeal, is this issue of incorrect advice regarding whether or not the case was probation. Right. So, again, I mean, what – how – I'm just trying to think of what could be presented, send it back, it's a new attorney. What could that attorney possibly argue that would trump the transcript? Well, and I think, again, it really depends, too, on having Mr. Reinhart be put on the stand. Because Mr. Reinhart wasn't sworn in. He wasn't submitted to cross-examination. No, no, my question – I mean, in Jolly, we have issues of counsel's discussions with his client, you know, whether it was proper for him to waive his speedy trial rights without talking to the client first, whether the counsel gave him the discovery. There were a number – there were a laundry list of issues that were raised, like in Jolly. That's an example of something that, you know, the record isn't going to tell us, you know, what we need to know. I mean, here, the only issue is whether or not counsel's told him that he believed that he was probation. Right. But certainly, at a hearing with independent counsel, that could be sussed out. We don't know that Mr. Reinhart didn't assure him multiple times before and after the plea that it still was probationable. And we don't know that because that wasn't fleshed out. How does that trump the transcript? Maybe he told him a hundred times. Maybe he told him, I guarantee you you're going to get probation. I guarantee you you're going to get probation. I mean, he took it all the way to the limit and said that. Counsel said that. I mean, how does that trump what the judge said when this issue was raised? And he went through – and the judge's ruling on at least the second motion to withdraw a plea was, you know, I recall when this happened and there was a question about it, and I went out of my way to make sure that this guy knew that it was Class X. And again, I would argue that because the Court used this conditional language of if that's true and the Class X is now probationable, but then confusingly lists the penalties for Class I and Class X, then I don't think it's completely clear to Mr. Skillam when he says, yes, I'm pleading guilty, that this is definitely a Class X offense. I think it's still up in the air. And depending on what Mr. Reinhardt is assuring him of, that is him entering his plea under a misapprehension of the law. If Mr. Reinhardt has assured him that I can definitely make sure that you don't have two prior Class IIs because he had this argument about whether or not the previous offense was even a Class II in 1908, which it clearly was, if his attorney is giving him these assurances that I can defeat this Class X sentencing, that does go to what did Mr. Skillam understand when he entered his plea of guilty? Was he entering his plea of guilty under misapprehension of the law? And if he was, that is a basis to withdraw it. And that's what independent counsel could provide him. We're talking in circles here. The judge said, you understood. You did not hesitate. You understood what was being asked of you. He made the finding that there's no question. You understood, and you told me you understood as well. Those are quotes. And, Your Honor, but I'd argue that when the judge makes his ruling on the motion to withdraw a plea in this case, he's doing it based on this not complete hearing because Mr. Reinhardt didn't suss out these issues and say, yeah, I actually did tell him. Would the judge have made the same decision if Mr. Reinhardt had gotten out there and said, you know what, actually, I told him a hundred times that it could be probationable, and I told him that after we pled guilty, after August 6th, before the sentencing hearing? Would the judge have made that same determination? And I don't think we can say that. As an officer of the court, Mr. Reinhardt answered the court's questions when the court asked him what he said. And he acknowledged, I may have said good news, they've dropped it down to the Class I, but I never promised them probation or drug court. I'm paraphrasing, but that's essentially what Mr. Reinhardt said. The court's not entitled to take his word? I think that in this scenario where it comes down to the credibility of the defendant versus the credibility of the attorney, it's very clear that we can't. Well, it doesn't come down to the credibility of what that off-the-record conversation is. It comes down to that plus what is said in open court on the transcript in answering the admonishments. And this court has said you cannot trump the admonishments. You cannot use off-the-record conversations as a vehicle to trump the admonishments that are given by a trial court at the time of the plea. And that is the obligation of the trial court to clear up any misunderstanding or misperceptions. Otherwise, what's the purpose of the admonishments? What's the purpose of the admonishments if we can just ignore them and allow a person to withdraw his or her plea based upon some cryptic conversation? Well, and I don't know that the conversation was cryptic. It made them very clear. But I don't, again, I would submit that these admonishments to the defendant may not have been as clear that Mr. Sloan walked out of that door on August 6th going back to the cell thinking, okay, I'm being class-act sentenced. I don't think that was clear. And for that reason, we believe that he should get independent counsel to represent this. Thank you. Thank you, Counsel. You will have time for a rebuttal argument. Ms. Swiss, you may proceed. Good morning, Your Honors. Counsel, I'd like to begin sort of at the end, meaning that I want to point out that the trial court's decision was all about the admonishments. And to the extent that defendants' motion to withdraw had an ineffective assistance of counsel in there, anything that could have been done at a Krankel hearing, and in a sense this could have been considered a preliminary Krankel hearing in the sense that the court has to look at ineffective assistance not just in terms of what counsel told his client. It's more than that. It's not only a deficient performance prompt, but we have to look at whether there's prejudice. And the prejudice would be that at the time of the plea, the defendant did not understand what he was getting into. Why did the trial court admonish on Class 1? Why did he agree? Why did the trial court admonish on Class 1? Your Honors, I can't say it's obviously not necessary, except that this was charged as a Class 1, and I think perhaps it was to make it a little clearer to him that while it's Class 1 and this is what you would get, he clearly said right after that, but here with your criminal history, you get Class X. And it was an answer to a question, and when I think about it, it was an answer to a question posed by defense counsel. Defense counsel said, I've already told him in the bullpen this morning that this is a Class X, but he seems to be confused about drug court probation. So I'm asking your Honor to please add to that so that maybe I wasn't thorough enough. He's continuing to question that. And so the court then said, yes, this is a Class 1, and that would be this, but you have two felonies, or if you have two felonies, you will then be convicted as a class or sentenced as a Class X offender. And as your Honor's have already mentioned, that was said over and over. These are exhaustive admonishments in terms of Class X, in terms of nonprobational. That was said at least once, possibly twice, and it couldn't have been clearer. So by the time that the defendant is making his plea, he has now said not only, and he was allowed to ask the court questions. The court said, do you have any other questions? You know, let me clear them up. The defendant said, no, I don't have any more questions. That answered my question. And then he was asked, do you understand, you know, that that is Class X? Yes. Do you understand that it's nonprobational? Yes. At that point, what more could the court do to make sure that what might have been a misunderstanding to begin with is no longer a misunderstanding? Do you agree that there were improprieties at the Cranco hearing? I would agree that he has a preliminary hearing for Cranco, yes, that the defense attorney should not have called his witness. But at that point, I would say this is a lot like NITS. I understand NITS, as you know, at Harmless Error. I understand NITS dealt with the evidentiary hearing, where then they had the same conflicted counsel, you know, representing him. But here, if there's a conflict between defense counsel and his client, again, it would be like a NITS situation. But unlike NITS, in this case, at the presumably the Cranco initial hearing, the state was allowed to participate, cross-examine the defendant, make arguments to counsel or to the court. That's true. So this puts you on the ballpark of Jolly, the NITS, isn't it? Well, Your Honor, first of all, just to point out, that wasn't even brought up in the initial brief. And, you know, I didn't respond to it because for that reason, you know, it seems to be forfeited. But to the extent that, you know, forfeiture can be overlooked and that, you know, we can go to that direction, I will say that alternatively, our argument is that it doesn't matter in this case. And the reason it doesn't matter is because you're looking at the trial court is, in other words, a harmless error. And it doesn't fall within, you know, Jolly says, well, NITS doesn't really control this because NITS is different. But in this case, not that NITS is similar, but a harmless error has never been ruled out totally in this type of situation. And this is the perfect case to say, if that adversarial, you know, quality, you know, changed this in some sense that wasn't compliant with what Prankle requires or suggests is needed, it had no bearing on the result. Because the trial court was looking to, wait a minute, you're talking about this, which is, you know, what your attorney talked to you about, we're talking about prejudice. That's, you know, whether there was deficient performance. We don't need to go there. Obviously, the defendant has to prove both. But the court can make the decision based on, you know, was there prejudice at the time. And that's a record. The record doesn't lie. We're not talking about something that's up to, you know, some type of weighing of credibility or anything else. And your prejudice would be whether or not there was a misunderstanding by the defendant at the time the trial court accepted its plea. Exactly. And your position is whatever errors there were are harmless beyond a reasonable doubt. And as the Supreme Court noted in Jolly, they said, Fields did not find that the State's improper adversarial participation in a preliminary Prankle hearing was structural error. In other words, it can be harmless error. That's correct. There's never been a case that says it can't be harmless. Just in particular cases, it hasn't been held to be harmless. And in this case, it is harmless because we are looking at two different things here. We're looking at basically a due process argument that, you know, that did he, by the time he made his plea, was it knowing and voluntary. Should this argument have been raised in the defendant's initial appeal? Could it have been raised? I'm trying to think if it could have been. When we sent the case back for, by agreement, 604D violation. Oh, it could have been. It very likely could have been raised at that point. I think that. Is the argument forfeited because it wasn't raised in the initial appeal? In the initial appeal, which was, oh, that was the, okay, I'm sorry. Yeah, I'm trying to recall here. But it came back on a remand because of the 604D problem. Yeah, I would say that it probably is forfeited because at that point, the entire record can be considered, of course. Of course, you forfeited forfeiture. Well, I did not raise that. You're right. So, yeah, but it probably is forfeited in terms of it could have been raised at that point. Even at this point, you know, there's, in a sense, a forfeiture of the trial court making the wrong decision because there's no argument as to what happened to the admonishments. I mean, counsel has not made any argument that those admonishments didn't occur this. And, you know, when you have an intervening event here, which is the admonishments, and those exhaustively told the defendant, you know, what to expect in terms of sentencing and that they were all proper and correct, that certainly cured any deficiency. And, you know, there is nothing to be gained to have this go back in some sense and to set it up with new counsel or even to go further in what was, you know, the discussion between the court and defense counsel on this. There's nothing to be gained. This is a record, and when it's a record, you know, in terms of whether I think there was an argument right now by appellate counsel that, you know, maybe there would be something that would come out at the hearing if there was a hearing that would say, well, something more was said, you know, ignore what the court said. Well, none of that. You know, that's just speculation. There's nothing to say that that's the case. The defendant's claim, and the court asked him to explain it, was that there was this initial discussion at which he was told, and obviously defense counsel, you know, rebuts that and says that he did not say that, but that was the initial discussion. So after that came all the admonishments, and then he accepted the plea, saying that he understood totally, had no questions. If you assume his statements to be true, the defendant's, his statements to be true that he was told something different by his attorney. The trust court? Are you asking me if the trust court? No. Let's just assume that the defendant's statements that his attorney told him, something contrary to what the judge told him, doesn't make a difference. Doesn't make a difference. And that's exactly it. There's no, there is no way to get around the fact that there is a completely different ground, basically, on which this is decided. It's not decided on whether, you know, counsel did or did not make these statements. And for that reason, we would ask that this court uphold the trial courts. Thank you, counsel. Ms. Johnson, rebuttal argument? Let me start off by asking a question. Do you read Jolly as saying that harmless error can never apply when the state participates? In Jolly, they did distinguish NITS and say that, and in Jolly, what I think they specifically said is that NITS is not a bad thing because NITS had a proper preliminary hearing. So to that extent, I think Jolly is saying, or preliminary inquiry, I guess, as to Krangel. So to that extent, I think Jolly is saying you have to have this preliminary inquiry and there isn't any issue about whether or not it's harmless error when we're talking about this preliminary stage. But I think that here, I would, it's very clear that the preliminary inquiry here was not proper. It was not properly done. Between his attorney calling his witness, the state participating adversarially, and the fact that the judge never really says, I think this is a conflict or not, and never addresses the conflict at all, he declined to question the defendant initially when his attorney asked him to. So I think it's very clear that preliminary inquiry is improper. But my argument would be that it doesn't matter because it's so clear that there's a conflict here. When we look at cases like Dean and Willis, this is a clear conflict. This is not like Dean where it's just a bald allegation of my attorney didn't want to go to trial. This is a clear, my attorney gave me contrary information to what the court told me, and that's why I didn't understand my plea. And that's what makes this just like Willis, which Dean distinguished but didn't overrule. This is a situation where there was an issue as to the criminal history that his attorney was able to steer him away from because his attorney is the one presenting this motion to withdraw a plea. And I think getting caught up in whether or not ultimately the court would have allowed Mr. Gillum to withdraw his plea misses the issue that Mr. Gillum did not have a conflict-free counsel to present his allegation that his motion to withdraw his guilty plea. He never made, again, we go back to this point. In Jolly, the court discussed the allegations that are made by the pro se litigant, by the pro se defendant. The court said, however, if the allegations show possible neglect of the case, a new counsel should be appointed. There was never an allegation. In fact, in the first appeal, this issue wasn't raised, so the defendant's state has an argument now that we could deem that issue forfeited. And with regard to the state's participation, that wasn't argued in your opening brief, and that issue is waived. Well, certainly as to the state's participation, again, I would say the point is the defendant never makes the allegation in the first place, and it's never raised in the first appeal. Then on a separate topic, the state's participation in the Krankel hearing was not raised in your opening brief. So tell us why we should ignore the court. Well, with regard to the first appeal, Your Honor, I mean, and again, I'm blanking on multiple cases where this court has said, we're just going to send it back to 6041 and address these other issues. That's not germane at this time. It's based upon the brief that is filed. Right. This information was in that opening record. It's the same information. You had this information for the defendant's first appeal. Why, in the interest of judicial comedy, all issues that are right for consideration should be raised, correct? That's correct, Your Honor. And I guess to the extent that if there – I would still submit that it's not a forfeiture because of the case law that has set back 6040 issues without addressing any underlying issues. But to the extent that if there is a forfeiture, the state has, I guess, revested, and there was just a decision the state can revest this court with jurisdiction by failing to object from this court. So to that extent, the state has replied to our opening brief here, and they've revested this court with jurisdiction. So I guess in that way, they've forfeited their forfeiture. But, again, I would go back to the idea that with Your Honor's concern that Mr. Skillam didn't raise ineffective assistance, this is much like Willis where he's represented by an attorney who's really arguing his own ineffectiveness, like presenting the issues for him. So in what way would Mr. Skillam have felt that he needed to say anything? Because Mr. Reinhart brings it to the court's attention, and the court says, I don't want to deal with it. Mr. Reinhart acknowledged that there was a conversation in the quote-unquote box, and everybody understands what he's talking about. The defendant is in custody sitting in the jury box while the call is being heard. Mr. Reinhart has a brief conversation with him, tells him good news, they're going to drop it down to a Class I. The defendant says, Mr. Reinhart said, you can get probation or possibly drug court. Mr. Reinhart says, no, I told him they dropped it down to a Class I. But by the time we were in front of the court, it was clear to him that it was Class X. So that's the conversation. What else would a new counsel have brought up? Well, I guess that's the issue. We don't know because Mr. Reinhart, again, and this is the issue, Mr. Reinhart isn't going to make a full determination of what their conversation was. He's steering the cross-examination away. He's not admitting things. Counsel could have sussed that out. And I do think, again. Again, with Justice Burke, the question that Justice Burke asked, on that point, the judge said, do you have any questions? And, again, we don't know what Mr. Tillum said. No, because my attorney totally covered it. We don't know what their conversation was. And without knowing their conversation, I don't believe that we can say that there's no possible way the result would have been different, depending on what, in fact, that conversation was. And I think that under 604D, it is contemplated that Mr. Tillum has concrete free counsel to present all of his allegations. And I think that that's what we don't have here. And for that reason, this does need to go back with independent counsel being able to present all the issues as to the motion to withdraw his guilty plea. Now, you're not saying that we can guess about other issues that may have come up. We're talking, again, we're really limited to this issue of the counsel's advice about Class X versus Class I probation, correct? Well, we need to figure out what the conversation with Mr. Tillum's attorney was. On that point, though. On that issue, yes. We're not going to speculate about maybe there were other things that were talked about that are totally unrelated to that issue. I mean, that is the issue. Did he understand the sentencing when he pledged? But, again, and again, when we say it's just this little conversation, we don't actually know the full extent of the conversation because, again, nobody cross-examined Mr. Reinhart. And no one was there to say, Mr. Reinhart, why is this good news if he's not getting any sentencing benefit? And that's really something that could have been sussed out by – Because he was going to go to trial that day, if not. And later on that day, apparently, or maybe the next day, contacted Mr. Reinhart and said, I misunderstood. Isn't that what happened? There was testimony. The call took place that same day. Right. And the state's ready for trial. And after he enters his plea, then he calls and says, I misunderstood. And Mr. Reinhart then files the motion. Correct? Correct. But certainly there's no suggestion anywhere that this was a trial avoidance plea. I don't – I can't – I don't think we can read that into the record. I think – and also there's no suggestion of prejudice. I mean, we have no reason to believe that if they withdrew the plea the next day, they could have gone to trial the next week. We don't know that. We can't – Well, the judge said you clearly understood. You understood what I was saying. And the judge said that. But, again, I would argue that the judge is only deciding this based on what Mr. Reinhart has presented. And that's not a full and fair presentation of what went on. And it's simply based on Krankel cannot – we can't ignore this conflict and say that, you know what, it's fine because he didn't get to present his argument in a fair way to the court. And for that reason, he does need independent counsel. Thank you. The court thanks both attorneys for their argument here today. The case will be taken under advisement. The court stands in recess.